Affirmed in Part, Reversed and Rendered in Part, and Opinion filed
August 23, 2007








 

Affirmed
in Part, Reversed and Rendered in Part, and Opinion filed August 23, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00032-CV

____________

 

SOLUTIONEERS CONSULTING, LTD., TOM
HAYNES, AND T&S HAYNES ENTERPRISES, LLC D/B/A MISSION CONTROL, Appellants

 

V.

 

GULF GREYHOUND PARTNERS, LTD., Appellee

 



 

On Appeal from the 56th
District Court

Galveston County, Texas

Trial Court Cause No. 03CV0184

 



 

O P I N I O N

In four issues, appellants Solutioneers Consulting, Ltd. (ASolutioneers@), Tom Haynes, and
T&S Haynes Enterprises, LLC d/b/a Mission Control (AMission Control@) challenge the
sufficiency of the evidence supporting the jury=s findings in
favor of Gulf Greyhound Partners, Ltd. (AGGP@) for fraud and
breach of contract.  We affirm in part and reverse and render in part.  








I.  Background

This appeal involves a series of transactions between
Haynes, his two advertising companies, Mission Control[1]
and Solutioneers, and the companies= client, GGP,
which operates a racetrack in Galveston County, Texas.  Haynes owns and serves
as general partner of Mission Control, an advertising agency that purchases
advertising time from various media outlets for clients.  Haynes also owns
Solutioneers, an advertising company whose business consists largely of
obtaining corporate sponsorships for clients.  As described in further detail
below, GGP entered into independent agreements with Mission Control and
Solutioneers to obtain advertising for and sponsorship of its racetrack
operations, and events relating to these agreements gave rise to the causes of
action in this appeal.

A.  Mission Control








In December 1999, GGP and Mission Control entered into an
agency contract in which Mission Control[2]
agreed, as agent of record, to purchase advertising time on GGP=s behalf in return
for commissions.  Charlie Fenwick, GGP=s director of
marketing, testified that GGP enlisted Mission Control to alleviate the burden
of conducting marketing operations in-house, which requires constant
communication with media outlets and a large volume of paperwork.  Under the
agreement, Mission Control would purchase advertising time[3]
for GGP as follows:  (1) Mission Control would select and agree to purchase
time from a media outlet, (2) the outlet would send an invoice to Mission
Control reflecting the amount due for the time, (3) Mission Control would
forward a Amaster@ invoice to GGP, which included the amount
due for the time plus Mission Control=s commission, (4)
GGP would pay Mission Control the entire amount on the master invoice within
ten to fourteen days of receipt, and (5) Mission Control would deduct amounts
for its commission and then forward the difference to the outlet as payment for
the time.  According to Fenwick, GGP expected Mission Control to forward
payment to the media outlet immediately upon receipt of payment from GGP.

As early as January 2001, GGP began receiving calls from
media outlets complaining that GGP had not paid invoices for advertising time
Mission Control had purchased.  Fenwick contacted Haynes about the complaints;
Haynes  assured Fenwick the invoices had been paid, that the outlets were
mistaken, and that his employees would investigate the situation.  Fenwick
testified that after these initial complaints, the problem went away, as GGP
did not hear anything further from the media outlet or Haynes, and GGP
continued to pay invoices based on Haynes=s assurances. 
However, as the year progressed, GGP received similar phone calls from a
growing number of outlets.  Eventually, in June 2001, after GGP made further
inquiries about the situation, Haynes set up a meeting with Fenwick.  At the
meeting, Haynes and his employee, Aldie Beard, disclosed that Mission Control
failed to forward $154,000[4]
to media outlets for time that Mission Control had placed for GGP, producing
detailed documentation of the delinquent accounts.  Haynes admitted he used
these funds to pay off debts to other media outlets because his Abusinesses@ were experiencing
financial difficulty.








Thereafter, Fenwick, Barry Sevedge, who is Fenwick=s boss and GGP=s general manager,
and another representative in GGP=s corporate office
held several meetings amongst themselves and with Haynes to determine the most
efficient method to resolve the outstanding debt while salvaging GGP=s business
reputation.  As a result of these meetings, GGP directed the media outlets to
send all future invoices directly to GGP and stated that GGP would now pay them
directly.  Further, Haynes agreed to help GGP negotiate with the outlets to
either release or reduce the outstanding debt in return for promises of future
advertising purchases from GGP, and the parties agreed Mission Control would
still receive commissions on future business it obtained in these
negotiations.  GGP decided not to sever ties and pursue legal action against
Haynes and Mission Control immediately because Haynes, who enjoyed closer,
long-term relationships with many of the media outlets and had more information
regarding the accounts in default, could serve as an intermediary and more
effectively negotiate down the debt than could GGP alone.  

Although GGP and Haynes successfully obtained debt releases
from most of the media outlets by promising future business, some outlets
refused, leaving $56,000 in unreleased debt.  Therefore, to avoid damage to its
credit, GGP paid $56,000 to these remaining outlets, which GGP considered a Adouble@ payment in that
it had once already transmitted funds to Mission Control to purchase this
time.  Sevedge testified that he considered the $56,000 double payment a loan
to Mission Control and that GGP never released Mission Control from liability
for repayment, though he explained that he and Haynes failed to negotiate a
firm schedule for repayment, despite repeated attempts.  Sevedge further noted
that, in addition to repaying the $56,000, GGP initially paid Haynes and his
employees commissions in excess of that originally agreed, in the hope that
Mission Control could continue business and would become able to repay the loan
in the future.  Haynes, on the other hand, understood that Mission Control had
no obligation to repay the $56,000, claiming Sevedge told him it was a Acost of doing
business.@  On July 10, 2002, after repeated failures to settle
on a repayment schedule, GGP terminated its relationship with Haynes and his
companies, including Mission Control.  Mission Control never repaid the
$56,000.








B.  Solutioneers

In February 2001, before GGP fully learned of Mission
Control=s failure to pay
the media outlets, GGP entered into a contract with Solutioneers in which
Solutioneers agreed to obtain sponsorships for the racetrack in return for
commissions.  Under the agreement, Solutioneers would receive commissions both
for obtaining new sponsorships and for enhancing the value of existing
sponsorships.  As with the original Mission Control agreement, the contract
provided that Solutioneers would collect payments directly from the sponsors
and remit GGP=s share within seven days of receipt.   

Thereafter, Solutioneers, through negotiations conducted by
Haynes, enhanced the value of an existing sponsorship agreement GGP held with
Miller Brewing Company (AMiller@) from $50,000 to
$75,000 per year for a two-year period.  In 2002, Miller made the yearly
payment in two equal installments of $37,500, one in the spring and one in the
fall.  Solutioneers received the spring payment on May 29, 2002, but failed to
remit to GGP its share until July 5, 2002.  Fenwick testified  that, when
confronted about the late payment, Haynes lied about whether he had received or
deposited the spring payment from Miller.  Solutioneers received the fall
payment on August 14, 2002, but never forwarded any portion of this payment to
GGP.  The record does not reveal what Solutioneers or Haynes did with these
funds.     

C.  Procedural History








 GGP thereafter filed suit against Mission Control,
Solutioneers, and Haynes.  GGP alleged Mission Control had, based on its
failures to forward payments to media outlets for advertising time it placed
and related misrepresentations and omissions, breached its contract and
committed fraud by misrepresentation and omission.  GGP also claimed Haynes
individually committed fraud by misrepresentation for such conduct.  GGP additionally
alleged that Solutioneers breached its contract in failing to remit GGP=s share of the
first Miller sponsorship payment within seven days of receipt and withholding
the entire second payment.  GGP also generally pleaded that Mission Control and
Solutioneers constituted alter egos of Haynes and thus the companies= corporate veils
should be pierced to hold Haynes personally liable.  Mission Control,
Solutioneers, and Haynes generally denied and asserted various affirmative
defenses, including ratification, waiver, and unclean hands.  Mission Control
counterclaimed for breach of contract, alleging GGP failed to pay over $66,000
in commissions for advertising time it placed from April 2002 to July 2002.  

At trial, the jury made the following findings:  (1)
Mission Control committed fraud by misrepresentation and by omission, (2)
Haynes committed fraud by misrepresentation, (3) Mission Control breached its
contract with GGP, which was not excused due to unclean hands or otherwise, (4)
GGP also breached the contract, but was excused, (5) Solutioneers breached its
contract with GGP, and (6) Haynes was responsible for the conduct of both
Mission Control and Solutioneers under an alter ego theory.  For each instance
of fraud by Mission Control and Haynes, the jury awarded $56,000 in damages for
the Adifference, if
any, in the value of the agency services received and the price [GGP] paid.@  For  Mission
Control=s breach of
contract, the jury awarded $56,000 in damages for the Adifference between
the value of the radio ads as represented and the value received.@  For Solutioneers=s breach of
contract, the jury awarded $52,237.50, the amount of sponsorship payments
Solutioneers failed to remit to GGP. 

The trial court entered judgment on the verdict.  The court
awarded recovery against Haynes and Mission Control, jointly and severally, for
$56,000 based on the jury=s findings of fraud and breach of
contract.  The court further awarded recovery against Solutioneers and Haynes,
jointly and severally, for the breach-of-contract damages.  The court
additionally awarded recovery against Mission Control and Solutioneers, jointly
and severally, for $75,000 in attorney=s fees.  The court
subsequently denied appellants= motions for new trial and for judgment
notwithstanding the verdict.  








On appeal, appellants challenge the sufficiency of the
evidence supporting the jury=s findings of fraud, alter ego, and excuse
for breach of contract.                     

II.  Analysis

In a legal sufficiency or no-evidence review, we determine
whether the evidence would enable reasonable and fair‑minded people to
reach the verdict under review.  City of Keller v. Wilson, 168 S.W.3d
802, 827 (Tex. 2005).  In conducting this review, we credit favorable evidence
if reasonable jurors could and disregard contrary evidence unless reasonable
jurors could not.  Id.  We must consider the evidence in the light most
favorable to the verdict, and indulge every reasonable inference that would
support it.  Id. at 822.  We must, and may only, sustain no-evidence
points when either the record reveals a complete absence of evidence of a vital
fact, the court is barred by rules of law or of evidence from giving weight to
the only evidence offered to prove a vital fact, the evidence offered to prove
a vital fact is no more than a mere scintilla, or the evidence establishes
conclusively the opposite of the vital fact.  Id. at 810.  Evidence is
no more than a scintilla when it is so weak as to do no more than create a mere
surmise or suspicion of its existence.  Ford Motor Co. v. Ridgway, 135
S.W.3d 598, 601 (Tex. 2004).  The factfinder is the sole judge of the
credibility of the witnesses and the weight to give their testimony.  See
Wilson, 168 S.W.3d at 819.  We conduct our review in light of the charge as
submitted to the jury.  See Osterberg v. Peca, 12 S.W.3d 31, 55 (Tex.
2000). 

In a factual sufficiency review, we consider all the
evidence supporting and contradicting the finding.  Plas‑Tex, Inc. v.
U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989).  We set aside the
verdict only if the finding is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust.  Cain v. Bain, 709 S.W.2d
175, 176 (Tex. 1986).  As with a legal sufficiency review, we conduct our
analysis in light of the jury charge.  See Osterberg, 12 S.W.3d at 55.  








A.  Fraud:  Mission Control and Haynes

In issues one and two, Mission Control and Haynes contend
the evidence is both legally and factually insufficient to support the jury=s findings of
fraud by misrepresentation and omission.[5] 
Mission Control and Haynes do not dispute that, upon receipt from GGP, they
failed to forward payments for advertising time to the appropriate media
outlets.  They argue, rather, that since GGP made the $56,000 double payment
after they disclosed the failure to pay, such expenditure did not result from
any misrepresentation or omission by Mission Control or Haynes, but rather was
made with Aeyes wide open.@ 








To recover on an action for fraud, a party must prove that
(1) a material representation was made, (2) the representation was false, (3)
when the speaker made the representation, he knew it was false or made it
recklessly without knowledge of the truth as a positive assertion, (4) the
speaker made it with the intention that it should be acted upon by the party,
(5) the party acted in reliance upon it, and (6) the party thereby suffered
injury.  Formosa Plastics Corp. USA v. Presidio Eng=rs &
Contractors, Inc., 960 S.W.2d 41, 47 (Tex. 1998); Manon v. Solis, 142
S.W.3d 380, 387 (Tex. App.CHouston [14th Dist.] 2004, pet. denied). 
Fraud by omission is a subcategory of fraud because an omission or non‑disclosure
may be as misleading as a positive misrepresentation of fact when a party has a
duty to disclose.  See Manon, 142 S.W.3d at 387.  Thus, failure to
disclose information does not generally constitute fraud unless there is a duty
to disclose the information.  See Bradford v. Vento, 48 S.W.3d 749, 755
(Tex. 2001).  The duty to disclose may arise (1) when the parties have a
confidential or fiduciary relationship, (2) when one party voluntarily
discloses information, which gives rise to the duty to disclose the whole
truth, (3) when one party makes a representation, which gives rise to the duty
to disclose new information that the party is aware makes the earlier
representation misleading or untrue, or (4) when one party makes a partial
disclosure and conveys a false impression, which gives rise to the duty to
speak.  See Ins. Co. of N. Am. v. Morris, 981 S.W.2d 667, 674 (Tex.
1998); Four Bros. Boat Works, Inc. v. Tesoro Petroleum Cos., 217 S.W.3d
653, 670B71 (Tex. App.CHouston [14th
Dist.] 2006, pet. filed).  

Based on our review of the record, we conclude the evidence
is both legally and factually sufficient to support the findings of fraud as to
Haynes and Mission Control.  First, the evidence shows that Haynes, acting for
Mission Control, made false, material misrepresentations to GGP and that
Mission Control failed to execute its duty to disclose information.  When GGP
asked Haynes about complaints from media outlets concerning delinquent payments
for advertising time, Haynes assured GGP that Mission Control had paid the
outlets and that the outlets were mistaken, but Haynes later disclosed to
Mission Control that it in fact had not paid numerous media outlets.  Further,
as an agent of record and thus fidcuciary for GGP, Mission Control at least had
a duty to disclose information pertaining to its inability to pay its bills and
its appropriation of GGP=s funds to pay such bills.  See Four
Bros. Boat Works, 217 S.W.3d at 668 (noting that principal-agent
relationship constitutes formal fiduciary relationship and gives rise to duty
to disclose information).                                                                             








Second, the evidence supports the jury=s findings that
Mission Control and Haynes both knew of the falsity of these representations,
or made them recklessly without knowledge of the truth, and intended GGP to
rely on them.  Haynes=s ultimate admission that Mission Control
failed to pay numerous media outlets as promised at least creates the inference
that Haynes acted recklessly when he told GGP in early 2001 that he had sent
payment to the media outlets and that they were mistaken in reporting the
accounts as delinquent.  Indeed, Sevedge testified that records revealed
Mission Control had incurred unpaid debt for GGP since 2000 and, in some cases,
as long as a year before Haynes disclosed the problem in June 2001.  Moreover,
the record reveals that after Haynes initially reassured GGP, Mission Control
continued to withhold GGP=s payments until June 2001.  See
Spoljaric v. Percival Tours, Inc., 708 S.W.2d 432, 434B35 (Tex. 1986)
(noting that fraudulent intent may be proven by circumstantial evidence and by
the party=s acts subsequent to the representation).  Further,
Haynes admitted he used the funds intended for the media outlets to pay other
creditors of Mission Control.  This evidence demonstrates both Haynes=s and Mission
Control=s knowledge of
falsity or reckless disregard for the truth and their intent for GGP to rely on
fraudulent conduct. 








Finally,
the evidence supports the jury=s findings as to GGP=s reliance on Mission Control and
Haynes=s misrepresentations and omissions
and as to the resulting injury.  After it contacted Mission Control in early
2001 about the media outlets= complaints, GGP relied on assurances from Mission Control
and Haynes that nothing was wrong in continuing to conduct business with
Mission Control.  As a result of its reliance, the evidence reveals that GGP
sustained out-of-pocket damages from Adouble@ paying the media
outlets $56,000 without repayment from Mission Control.  See Baylor Univ. v.
Sonnichsen, 221 S.W.3d 632, 636 (Tex. 2007) (noting that Texas recognizes
out-of-pocket damages for common‑law fraud and that such damages Ameasure the
difference between the value of that which was parted with and the value of
that which was received@).  Although Haynes denied Mission Control
was obligated to repay GGP=s double payment, Sevedge testified to the
contrary, and the jury was free to believe his testimony over Haynes=s.  See Wilson,
168 S.W.3d at 819.  Moreover, Haynes=s emphasis on GGP=s admission that
it received all the advertising spots represented by the $56,000 is misplaced,
given that GGP had to expend twice the value of these spots to receive them. 
Finally, Haynes=s contention that GGP paid the $56,000
with Aeyes wide open@ fails because,
but for Mission Control and Haynes=s
misrepresentations and omissions on which GGP relied, GGP would not have had to
pay this amount out of pocket.  See Tilton v. Marshall, 925 S.W.2d 672,
680 (Tex. 1996) (holding that ordinary measure of damages in fraud case is
actual amount of plaintiff=s loss that directly and proximately
results from defendant=s fraudulent conduct); see, e.g., Playboy
Enters., Inc. v. Editorial Caballero, S.A. de C.V., 202 S.W.3d 250,
269B70 (Tex. App.CCorpus Christi
2006, pet. filed) (finding legally sufficient evidence of out-of-pocket damages
where appellee, in reliance on appellant=s fraud, expended
funds for business activities); 1001 McKinney Ltd. v. Credit Suisse First
Boston Mortgage Capital, 192 S.W.3d 20, 29B30 (Tex. App.CHouston [14th
Dist.] 2005, pet. denied) (holding appellant created fact issue as to recovery
for out-of-pocket fraud damages where, in reliance on appellee=s promises to lend
additional funds for building renovation, appellant alleged it continued to
renovate building and enter into lease agreements).  

As such, we conclude the evidence would enable reasonable
and fair-minded people to reach the findings of fraud and that such findings
are not so contrary to the overwhelming weight of the evidence as to be clearly
wrong and unjust.    

We overrule issues one and two.  

B.  Alter Ego:  Solutioneers








In issue three, Haynes contends the evidence is legally and
factually insufficient to support the jury=s finding that
Solutioneers constituted his alter ego and, thus, insufficient to hold him
personally liable for Solutioneers=s breach of
contract.[6] 
Haynes argues that, even if Solutioneers constituted the alter ego of Haynes,
there is no evidence he used Solutioneers to perpetrate an actual fraud or that
he perpetrated any such fraud primarily for his own direct personal benefit, as
required under article 2.21(A) of the Texas Business Corporation Act.

The Texas Business Corporation Act provides that an owner
of a corporation is not liable for contractual obligations of the corporation
under an alter ego theory unless the plaintiff demonstrates the owner Acaused the
corporation to be used for the purpose of perpetrating and did perpetrate an
actual fraud on the obligee primarily for the direct personal benefit of the .
. . owner.@  See Tex.
Bus. Corp. Act Ann. art. 2.21(A)(2) (Vernon 2003).  The alter ego
doctrine applies Awhen there is such unity between
corporation and individual that the separateness of the corporation has ceased
and holding only the corporation liable would result in injustice.@  Castleberry
v. Branscum, 721 S.W.2d 270, 272 (Tex. 1986); see Cappuccitti v.
Gulf Indus. Prods., Inc., 222 S.W.3d 468, 481 (Tex. App.CHouston [1st
Dist.] 2007, no pet.); Puri v. Mansukhani, 973 S.W.2d 701, 713 (Tex.
App.CHouston [14th
Dist.] 1998, no pet.).  Actual fraud involves dishonesty of purpose or intent
to deceive.  See Castleberry, 721 S.W.2d at 273.   

GGP cites the following evidence in support of the jury=s findings of alter
ego, actual fraud, and direct personal benefit:  

$                  
Sevedge
testified that Haynes said he wanted to conduct sponsorship business using
Solutioneers, instead of Mission Control, because Haynes Awas the sole person that was going
to be selling the sponsorships,@ such Awas primarily [Haynes=s] work,@ and thus Haynes did not want Ato share [income] with [Mission
Control employees] who would not be contributing much to . . . selling
sponsorship[s].@

$                  
Sevedge further
testified that, after revelation of the Mission Control situation, Haynes
admitted he formed Solutioneers so that he could shelter the sponsorship
commission income from Mission Control=s creditors.  Haynes denied making this comment.

$                  
Haynes met with
his lawyers early in 2002 about moving contractual obligations from Mission
Control to Solutioneers.








$                  
The $10,000
advance commission payment intended for Solutioneers was made out to Mission
Control and indorsed by Mission Control/Haynes Media & Marketing.

$                  
The draft
contract between Solutioneers and GGP called for payment to Haynes
individually. 

$                  
Haynes lied to
GGP about whether he deposited the first Miller sponsorship payment.

$                  
In obtaining
GGP=s underwriting of a program called
The Boxing Show, for which GGP agreed to pay Solutioneers $3,600 per week,
Haynes failed to disclose that he received $1,900 of this amount back, and
Sevedge testified he would not have agreed to this deal if he knew about Haynes=s $1,900 payment. 

$                  
GGP=s payments to Haynes Akept the businesses that Haynes
owned afloat, [and, therefore,] Haynes continued to receive a salary,@ and Haynes=s Aownership interest benefited [sic] from the assets
Mission Control and Solutioneers were able to retain.@

We disagree with Haynes that GGP, by withdrawing its fraud
claim against Solutioneers, in essence admitted he and Solutioneers failed to commit
actual fraud.  The jury was instructed it could not find Haynes was responsible
for Solutioneers=s conduct without a finding of actual
fraud, and, thus, in making this finding, it impliedly found actual fraud.  See Cass v. Stephens, 156 S.W.3d 38, 58B59 (Tex. App.CEl Paso 2004, pet. denied) (holding
that jury impliedly found actual fraud in making alter ego finding because it
was instructed it could not find alter ego without finding of actual fraud).








However,
we
nonetheless conclude that the record does not reveal more than a scintilla of
evidence supporting the jury=s finding that any fraud Haynes
perpetrated by using Solutioneers to retain or misappropriate Miller
sponsorship payments was primarily for his direct personal benefit.  The record
does not show what Haynes did with these funds, including, for example, whether
he deposited them into his own personal account or used them to purchase
personal items or to pay personal debts.  Compare Farr v. Sun World Sav.
Ass=n, 810 S.W.2d 294, 298 (Tex. App.CEl Paso 1991, no
writ) (upholding finding of direct personal benefit under article 2.21(A)(2)
because shareholder deposited  proceeds from sale of note in mortgage company=s account, rather
than tendering them to lender as agreed, and then used proceeds to pay personal
stock purchase loans), with Bates v. de Tournillon, No. 07‑03‑0257‑CV,
2006 WL 265474, at *3 (Tex. App.CAmarillo Feb. 3,
2006, no pet.) (mem. op.) (holding evidence legally insufficient to support
finding that corporation was alter ego of sole shareholder under article
2.21(A)(2) because, though shareholder moved equipment and inventory used by
corporation into storage after default on lease, to which lessor and third
parties had interest, there was no evidence he personally made use of such
items or that his actions were otherwise primarily for his direct personal
benefit), and Scott v. McKay, No. 12‑02‑00195‑CV,
2003 WL 21998629, at *2 (Tex. App.CTyler Aug. 20,
2003, no pet.) (mem. op.) (finding no evidence of alter ego under article
2.21(A)(2) because there was no evidence that shareholder used loan to
corporation for personal benefit and evidence showed only that loan was
deposited into corporation=s bank account and used to pay corporate
debt and salaries).  Indeed, though the draft contract called for payment to
Haynes individually, the final contract calls for payment to Solutioneers. 
Moreover, even if we assume maintaining a personal salary from or ownership
interest in SolutioneersCby misappropriating the Miller sponsorship
payment in order to keep Solutioneers afloatCconstitutes a
direct personal benefit under article 2.21(A), we find no evidence in the
record regarding any salary Haynes received from Solutioneers or any evidence
illustrating how Haynes=s conduct surrounding the Miller transaction
affected this salary.[7]
 Compare In re Morrison, 361 B.R. 107, 120 (Bankr. W.D. Tex. 2007)
(applying article 2.21(A)(2) and concluding that majority stockholder received
direct personal benefit from misrepresenting financial health of corporation to
obtain lucrative contract for corporation, as stockholder knew he needed
contract to keep corporation afloat and thus draw his salary, which records
indicated was Asubstantial@). 








Accordingly, because we conclude that the record reveals a
complete absence of evidence of direct personal benefit to Haynes resulting
from fraud in relation to Solutioneers and the Miller sponsorship, we sustain
issue three.[8] 


C.  Excuse for Breach of Contract:  GGP 








In issue four, Mission Control claims the evidence is
legally[9]
insufficient to support the jury=s finding that GGP
was excused for breaching its contract with Mission Control and maintains the
jury thus should have awarded Mission Control unpaid commissions under the
agency contract pursuant to its counterclaim for breach.  Mission Control
asserts that GGP=s only alleged excuse for failing to pay
the commissions was Mission Control=s error in
calculating the amount due and that GGP refused to pay even after Mission
Control corrected the error.  GGP counters that the jury was instructed that
its breach of the agency contract would be excused if it found Mission Control
breached the contract first, and, in a separate question, the jury found
Mission Control breached the contract.  To this end, Mission Control claims the
Acontract@ the jury found it
breachedCa term the charge
did not expressly defineCwas a  separate agreement with GGP to fund
the buy down of the $56,000 debt, not the agency contract.  Thus, Mission
Control concludes, the jury=s finding that it breached the buy down
agreement could not have served as a basis for excusing GGP=s breach of the
agency contract. 

We initially address whether Mission Control preserved its
legal sufficiency complaint regarding the jury=s finding of GGP=s excuse for
breach of contract.  AA >no evidence= issue is
preserved for appeal in one of five ways:  (1) a motion for instructed verdict,
(2) a motion for judgment notwithstanding the verdict, (3) an objection to the
submission of the issue to the jury, (4) a motion to disregard the jury's
answer to a vital fact issue, or (5) a motion for new trial.@  Halim v.
Ramchandani, 203 S.W.3d 482, 487 (Tex. App.CHouston [14th
Dist.] 2006, no pet.) (citing Cecil v. Smith, 804 S.W.2d 509, 510B11 (Tex. 1991)). 
We have reviewed Mission Control=s motion for
directed verdict, its objections at the charge conference, its motion for
judgment notwithstanding the verdict, and its motion for new trial and find no
arguments that could be construed as challenging the sufficiency of the
evidence relating to GGP=s excuse for breaching the contract with
Mission Control.  Indeed, Mission Control failed to lodge an objection to the
jury question on GGP=s excuse at the charge conference. 
Moreover, in its motion for judgment notwithstanding the verdict and motion for
new trial, Mission Control challenged only the sufficiency of the evidence to
support the jury=s finding that Mission Control itself
breached the contract; specifically, Mission Control asserted that GGP suffered
no injury and that the jury disregarded its affirmative defense of unclean
hands.  As such, we hold that Mission Control failed to preserve its legal
sufficiency challenge to the jury=s finding
regarding GGP=s excuse for breach of contract for our review. 

We overrule issue four.  

III.  Conclusion








We conclude the evidence is legally and factually
sufficient to support the jury=s findings of breach of contract and fraud
as to Mission Control and Haynes.  We further conclude the evidence is legally
and factually insufficent to support the jury=s finding that
Solutioneers constitutes an alter ego of Haynes.  We finally conclude the
evidence is legally sufficient to support the jury=s finding that GGP
was excused for its breach of contract with Mission Control.  Accordingly, we
affirm the trial court=s judgment with respect to issues one,
two, and four, and reverse and render judgment with respect to issue three.

 

 

 

 

/s/      Leslie B. Yates

Justice

 

 

 

 

Judgment rendered
and Opinion filed August 23, 2007.

Panel consists of
Justices Yates, Frost, and Seymore.









[1]  T&S Haynes Enterprises, LLC, a named appellee,
is the parent company of Mission Control.





[2]  Mission Control entered into the contract under its
former name, Haynes Media & Marketing, but the parties do not dispute that
the contract fully applies to Mission Control.





[3]  Mission Control obtained two types of advertising
time for GGPCAnetwork@
and Anon‑network.@ 
Network time included time Mission Control had previously purchased through
contracts with media outlets and would then resell to GGP.  Non‑network
time included time Mission Control sought out and purchased on behalf of GGP,
and, as compensation for obtaining non-network time, Mission Control received a
fifteen percent commission.  Because non-network time represents the focus of
this appeal, unless otherwise specified, all references to advertising time and
related debt refer to non-network time and debt.





[4]  Some portions of the record reflect $164,000 as the
amount of non-network debt.  Because the parties do not dispute the particular
numerical value of the final damage award as to Mission Control and Haynes,
which was extrapolated from the non-network debt figure, we need not address
this discrepancy. 





[5]  GGP notes Haynes contended to the trial court that,
although statements Aregarding performance or payment . . . [were]
technically verbalized through [Haynes], [these] statements were made on behalf
of [Mission Control].@  Haynes does not renew this contention on appeal,
but, in any event, we note that corporate agents may be individually liable for
fraudulent acts committed while in the service of their corporation.  See
Shapolsky v. Brewton, 56 S.W.3d 120, 133 (Tex. App.CHouston [14th Dist.] 2001, no pet.) (noting also that
officer of corporation is always primarily liable for own torts, even though
principal is also liable for those actions). 





[6]  Within his legal sufficiency argument, Haynes
contends the instruction to the alter ego question was legally erroneous and
should not have been submitted.  He appears to complain the instruction did not
encompass the Aactual fraud@
requirement in article 2.21(A)(2) of the Texas Business Corporation Act.  See
Tex. Bus. Corp. Act. Ann. art
2.21(A)(2) (A[T]he . . . owner . . . caused the corporation to be
used for the purpose of perpetrating and did perpetrate an actual fraud on the
obligee primarily for the direct personal benefit of the . . . owner . . . .@).  At the charge conference, Haynes objected to this
instruction only on legal and factual insufficiency grounds, not that it failed
to include a required element.  Thus, we conclude Haynes has waived this
complaint.  See Tex. R. App. P. 33.1(a);
Tex. R. Civ. P. 274 (AA party objecting to a charge must point out distinctly
the objectionable matter and the grounds of the objection. Any complaint as to
a question, definition, or instruction, on account of any defect, omission, or
fault in pleading, is waived unless specifically included in the objections.@); Knox v. Taylor, 992 S.W.2d 40, 65 (Tex. App.CHouston [14th Dist.] 1999, no pet.) (holding complaint
on appeal must comport with objection in trial court).  In any event, we note
that the instruction=s language in fact tracks the Aactual fraud@
language from article 2.21(A)(2) and that GGP does not dispute that article
2.21(A)(2) governs.





[7]  The only reference to a salary of any kind appears
in Sevedge=s testimony concerning his negotiations with Haynes
about a repayment schedule for GGP=s
double payment of the $56,000 for the debt Mission Control incurred and appears
to relate only to Haynes=s salary from Mission Control. 





[8]  In a footnote in his brief, Haynes notes that the
judgment does not explicitly refer to the jury=s finding of alter ego as to Mission Control and concludes that GGP has
waived any issue in this regard.  Haynes then contends that, Ato the extent [this] jury finding . . . remains at
issue,@ the evidence was legally and factually insufficient
to support the jury=s finding of alter ego as to Mission Control, citing
its arguments regarding Solutioneers in support.  GGP counters that it has not
waived the argument and that the evidence is legally and factually sufficient. 
However, neither party requests relief specific to this finding or otherwise
explains how our disposition of this issue would affect this appeal.  As such,
we conclude that both parties have failed to present error regarding this issue
to this court, and, accordingly, we need not address it.  See Tex. R. App. P. 33.1(a). 





[9]  In its brief, Mission Control argues that the jury=s finding of excuse is based on Ano evidence,@
and it does not distinguish its analysis, as in its other issues, between legal
and factual sufficiency.  To the extent Mission Control attempts to bring a
factual sufficiency challenge as to this finding, we hold it has waived such
issue.  Tex. R. App. P. 33.1(a). 
See generally Tacon Mech. Contractors, Inc. v. Grant Sheet Metal, Inc.,
889 S.W.2d 666, 669B70 (Tex. App.CHouston
[14th Dist.] 1994, writ denied) (holding appellant bringing legal and factual
sufficiency challenges waived factual sufficiency point because appellant
failed to present any argument, or citations to authority or record for such
alternative claim).